# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8384 | **DATE** | 4/9/2002 |
| **CASE TITLE** | LEGATO PARTNERS, LLC vs. GARDENS ALIVE, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Status hearing held. Discovery to close October 7, 2002. Pretrial conference set for February 4, 2003 at 10:30 a.m. Jury trial is set for March 10, 2003 at 10:00 a.m. Enter Memorandum Opinion And Order. Defendant's motion for summary judgment is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | APR 10 2002 date docketed | |
| | Notified counsel by telephone. | | | | |
| ✓ | Docketing to mail notices. | | | | 20 |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| LG | courtroom deputy's initials | | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials | |


| | ) | |
|---|---|---|
| **LEGATO PARTNERS, LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 01 C 8384 |
| | ) | |
| v. | ) | The Honorable John W. Darrah |
| | ) | |
| **GARDENS ALIVE, INC.,** | ) | |
| | ) | |
| Defendant. | ) | APR 1 0 2002 |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Legato Partners, Inc. ("Plaintiff"), originally filed a single-count complaint against Defendant, Gardens Alive, Inc. ("Defendant"), alleging breach of a purchase agreement, in the Circuit Court of Cook County, Illinois. Defendant removed the action to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

Defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons stated herein, Defendant's Motion for Summary Judgment is denied.

## LEGAL STANDARD

Summary judgment is appropriate when there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no genuine

issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that there remains a genuine issue of material fact and show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

## BACKGROUND

The undisputed facts taken from the parties' Local Rule 56.1(a) & (b) statements of material facts[1] (referred to herein as "Pl.'s 56.1" and "Def.'s 56.1") and exhibits are as follows.

Plaintiff is an Illinois limited liability company with its principal place of business in Chicago, Illinois. (Def.'s 56.1 ¶ 1.) Defendant is a Delaware corporation with its principal place of business in Lawrenceburg, Indiana. (Def.'s 56.1 ¶ 2.)

Foster & Gallagher, Inc. was a direct-mail marketer of horticultural and gift products, such

---

[1] Defendant did not file a response to Plaintiff's Statement of Additional Facts. Therefore, these paragraphs are deemed as admitted.

as plants and stationery and housewares. (Pl.'s 56.1 ¶ 3.) Foster & Gallagher operated four business units: (1) the Spring Hill Group, which sold mostly bulbs, perennials, fruit trees, and shrubs; (2) the Michigan Bulb Company, which sold mostly perennials, seeds, and house plants; (3) the Gift Group, which sold personalized items and kitchen, home, and housekeeping goods; and (4) the Children's Group, which sold toys. (Pl.'s 56.1 ¶ 3.) In the summer of 2001, Foster & Gallagher, a debtor in bankruptcy, announced that it would auction off certain horticultural and other assets at public auction. (Pl.'s 56.1 ¶ 4.) The auction was scheduled for September 11, 2001. (Pl.'s 56.1 ¶ 4.)

During the September 11, 2001 auction, Plaintiff, Defendant, and CBTA Acquisitions ("CBTA") orally entered into a Joint Bid Agreement by which the parties determined that Defendant would place at the auction a combined $10,000,000 bid to purchase a group of certain assets ("Enterprise Assets"). (Pl.'s 56.1 ¶ 6.) The parties had determined that it would be in their economic and financial best interests to bid as a group for the Enterprise Assets, which would enable them to purchase the specific assets they each wanted at the lowest possible price. (Pl.'s 56.1 ¶ 6.) Plaintiff and CBTA each entered into a separate agreement with Defendant in which Defendant agreed to sell Plaintiff and CBTA certain portions of the Enterprise Assets if Defendant was the successful bidder. (Pl.'s 56.1 ¶ 6.) The terms of the Joint Bid Agreement were not written and signed by the parties. (Def.'s 56.1 ¶ 7.)

On September 11, 2001, Plaintiff and Defendant agreed that if Defendant was the successful bidder at the auction, Defendant would sell Plaintiff the following assets in exchange for $3,000,000: (1) the trade names, URLs, customer lists, digital images, and inventory in Lot B; (2) Lot C, including the trademarks and URLs of the Flower of the Month Club; (3) the trademarks, URLs, customer lists, digital images, and inventory of the Michigan Bulb Company in Lot F; (4) Lots R1,

R3, and R6; (5) Lots S1 and S2, digital images; (6) Lots T1, T2, and T5, internet domain names; (7) Lots V1, V2, and V6, trade names of certain companies; and (8) Lots W1 through W9, specialty horticultural equipment owned by Foster & Gallagher. (Pl.'s 56.1 ¶ 7.) These assets did not include any real estate or patents. (Pl.'s 56.1 ¶ 8.) The agreement between Plaintiff and Defendant did not involve the transfer of real estate or patents. (Pl.'s 56.1 ¶ 8.) Counsel for CBTA drafted a Term Sheet that identified the assets Defendant would transfer to Plaintiff and CBTA and e-mailed the Term Sheet to the parties. (Pl.'s 56.1 ¶ 9.) Defendant's statement of material facts does not refute this and refers only to the transfer of real property and patents "among the parties." (Kinerk Aff. ¶ 8.) The parties include CBTA as well as Plaintiff and Defendant.

CBTA's agreement with Defendant provided that if Defendant was the successful bidder, Defendant would sell to CBTA certain assets for $1,900,000. (Pl.'s 56.1 ¶ 10.) These assets included real property and patents. (Pl.'s 56.1 ¶ 10.)

Defendant entered the joint bid of $10,000,000 during the September 11 auction. (Def.'s 56.1 ¶ 8.) Prior to entering the joint bid, Defendant had placed an individual bid on some of the assets contained in Lot A. (Def.'s 56.1 ¶ 9.) On September 14, 2001, Foster & Gallagher notified the parties that it had rejected the joint bid. (Def.'s 56.1 ¶ 10.) The auction was rescheduled for bidding on September 19, 2001. (Pl.'s 56.1 ¶ 12; Def.'s 56.1 ¶ 13.)

Plaintiff and Defendant determined that Defendant would place an individual bid at the September 19 auction for the Enterprise Assets. (Pl.'s 56.1 ¶ 13.) Plaintiff and Defendant also agreed that if Defendant were the successful bidder at the auction, Defendant would negotiate in good faith to sell the assets enumerated above to Plaintiff for a sum of money. (Pl.'s 56.1 ¶ 13.) Plaintiff understood from this agreement that whatever the bid price was, it would pay Defendant

-4-

an amount equal to Plaintiff's percentage of the original joint bid price. (Pl.'s 56.1 ¶ 13.) There was no signed writing evidencing an agreement to submit a bid in the amount of $10,750,000 for the Horticulture Group Assets. (Def.'s 56.1 ¶ 11.) Prior to the September 19, 2001 auction, Defendant advised Plaintiff that its $10,750,000 bid was an individual bid, not a joint bid, and that Plaintiff was free to bid on Foster & Gallagher's assets on its own behalf or in concert with other bidders. (Def.'s 56.1 ¶ 14.)

On September 19, 2001, Defendant entered a bid for $10,750,000 for all the Horticulture Group Assets. (Def.'s 56.1 ¶ 15.) Plaintiff's representatives and counsel attended the September 19 auction by telephone. (Def.'s 56.1 ¶ 16.) Plaintiff did not raise any objections to Defendant's bid at the September 19 auction. (Def.'s 56.1 ¶ 18.) Plaintiff did not align itself with another bidder or place a bid for those assets at the September 19 auction.(Pl.'s 56.1 ¶ 14; Def.'s 56.1 ¶ 17.) CBTA entered an independent bid in the amount of $2,200,000 for a portion of Lot A. (Def.'s 56.1 ¶ 19.)

Foster & Gallagher accepted Defendant's bid. (Def.'s 56.1 ¶ 20.) Defendant has refused to negotiate in good faith with Plaintiff and refused to transfer the assets enumerated above to Plaintiff for $3,225,000. (Pl.'s 56.1 ¶ 16.)

## DISCUSSION

Defendant argues that summary judgment is appropriate because the agreement alleged by Plaintiff is void under the Illinois Statute of Frauds and the "in writing" requirement of the Patent Act. Plaintiff argues that summary judgment is not appropriate because real property and patents were not part of its agreement with Defendant.

An oral contract exists where there is a meeting of the minds with respect to the terms of the agreement and the parties intended to be bound to the oral agreement. *Podolsky v. Alma Energy*

*Corp.*, 143 F.3d 364, 369 (7th Cir. 1998) (citing *M.T. Bonk Co. v. Milton Bradley Co.*, 945 F.2d 1404, 1407 (7th Cir. 1991). "The existence of an oral contract, its terms, and the intent of the parties is a question of fact." *Podolsky*, 143 F.3d at 369. Illinois law provides that:

> [n]o action shall be brought to charge any person upon contract for the sale of lands . . . or any interest in or concerning them, for a longer term than one year, unless such contract or some memorandum or note thereof shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized in writing, signed by such party.

740 Ill. Comp. Stat 80/2 (2002). An agreement that involves real as well as intellectual property will be subject to the Illinois statute of frauds. *See Midwest Mfg. Holding, L.L.C. v. Donnelly Corp.*, 975 F. Supp. 1061, 1068 (N.D. Ill. 1997) (holding that an agreement for the sale of intellectual property that involved a land transfer was covered by the statute of frauds); *Parks v. Kubacki*, No. 86 C 9996, 1987 WL 16599, at *2 (N.D. Ill. Aug. 28, 1987) ("[W]hen promises that are not within the statute of frauds are coupled with one that is, the entire contract is unenforceable unless the promises are divisible."); *Pond v. Sheean*, 132 Ill. 312, 323 (1890) ("The contract, however, must be regarded as an entirety; and, if void as to real estate, it must also be held void as to personal property.").

There is a genuine issue of material fact as to whether the agreement between Plaintiff and Defendant involved the purchase of real property. Plaintiff asserts that there were two separate agreements, one between it and Defendant and another between Defendant and CBTA. Only the agreement between Defendant and CBTA involved the transfer of real property. The agreement between Plaintiff and Defendant involved the purchase of trade names, trademarks, URLs, and customer lists that were to be sold to Plaintiff. Therefore, there is a genuine issue of material fact as to whether the agreement between Plaintiff and Defendant is covered by the statute of frauds and was required to be in writing.

Plaintiff argues that the statute of frauds does not apply because it partially performed by evaluating Foster & Gallagher's assets, engaging in meetings regarding the negotiation of the agreement, exchanging numerous e-mails and correspondence, and refraining from aligning itself with another bidder or placing its own bid at the September 19 auction.

"Partial performance is an equitable doctrine that can remove an oral contract to convey real property from the operation of the statute of frauds." *Podolsky*, 143 F.3d at 371 (citing *Hartbarger v. SCA Services, Inc.*, 200 Ill. App. 3d 1000, 1017 (1990)). However, in order to apply the partial performance exception to the statute of frauds, "the court must find that the terms of the contract are clear, definite, and unequivocal, that the contract has been at least partially performed by the party seeking the remedy and that the acts alleged done in performance are positively attributable exclusively to the contract." *Podolsky*, 143 F.3d at 371-72 (quoting *Leekha v. Wentcher*, 224 Ill. App. 3d 342, 349-50 (1991) (citation omitted)). Additionally, the performance must be in reasonable reliance on the contract, restitution is an inadequate remedy, and the performance evidences the existence of a contract and is not readily explainable on any other ground. *Brunette v. Vulcan Materials Co.*, 119 Ill. App. 2d 390, 397 (1970).

Defendant argues that the partial performance exception to the statute of frauds does not apply because the alleged agreement between Plaintiff and Defendant did not contain a price term; Defendant allegedly agreed to sell the assets to Plaintiff for some unspecified sum of money.

A price term is an essential part of a contract, and, without a price term, there is no clear, definite, and unequivocal agreement to bring an oral agreement outside the statute of frauds. However, here, there is a genuine issue of material fact as to whether there was a definite price term. Plaintiff asserts that it understood from the alleged agreement that it was to purchase the enumerated

price at an amount equal to Plaintiff's percentage of the original joint bid price. Moreover, there is a genuine issue of material fact as to whether Plaintiff reasonably relied on the contract. Plaintiff did not align itself with another bidder or bid on the desired assets itself. Furthermore, Plaintiff asserts that it contributed to the process by evaluating Foster & Gallagher's assets and negotiating with Defendant. There is a genuine issue of material fact from which a rational jury could find for Plaintiff.

Finally, Defendant argues that summary judgment is appropriate because the agreement between it and Plaintiff involved the transfer of patents and, therefore, had to be in writing pursuant to federal law.

Federal law requires that any agreement assigning a patent must be in writing. 35 U.S.C. § 261 (2002). As was discussed above, there is a factual dispute as to whether the agreement between Defendant and Plaintiff involved the transfer of patents. Plaintiff asserts that its agreement with Defendant involved the purchase of trade names, trademarks, URLs, and customer lists but no patents. CBTA agreed to buy the patents from Defendant. Therefore, there is a genuine issue of material fact from which a rational jury could find for Plaintiff.

## CONCLUSION

For the reasons stated herein, Defendant's Motion for Summary Judgment is denied.

**IT IS SO ORDERED.**

_____
John W. Darrah, Judge
United States District Court

Date: April 9, 2002